2-1415 TECSEC v. IBM TECSEC INC v. IBM TECSEC has brought this appeal primarily to correct two claim construction decisions made by the District Court, both which relate to a phrase found in the preamble of the asserted claim. Are these the same claim construction arguments, or are we talking about the same claims that were subject to the case that came before us? Yes, Your Honor. These are the same terms and the same constructions that are at issue here. The defendants have asserted that collateral estoppel precludes this appeal because these claims were appealed in the case against IBM related to a summary judgment of no infringement against IBM. The defendants bear the burden of proving that collateral estoppel applies under a five-factor test set forth under Fourth Circuit law, and they must show that each of those five elements are present for collateral estoppel to apply. The defendants cannot meet their burden with respect to two of those prongs. The second prong of the five-factor test, that the claim construction rulings were necessary to the District Court's judgment, and the third prong, that this Court necessarily decided those claim construction rulings on the first appeal by primarily affirming the judgment of no infringement. For the necessary to the judgment prong, under Fourth Circuit law, CB Marchand v. Eastern Foods, the Fourth Circuit adopted the modern rule which is set forth in the Second Restatement of Judgment, and that is if a District Court sets forth multiple independent grounds for its ruling in a judgment, neither one standing alone is considered necessary and essential to the judgment for collateral estoppel. And the last time around, there were arguments both with respect to claim construction and with respect to a failure of evidence, failure of proof. That's absolutely right, Ron, and the District Court's opinion clearly sets forth those. The first independent ground for no infringement goes through the lack of evidence, even under Tex-Ex theory. So the heading is under 1 and 2 of the District Court's non-infringement section, that even under Tex-Ex theory, and it goes through a lack of evidence. And only after going through that 16 pages of the Court's analysis, there's heading number 3, which says the accused product do not meet the required claim limitation. And I'll just read the words from the Court's beginning of that opinion, that A38 says, in addition to Tex-Ex failures to produce evidence according to its allegations, plaintiff's allegations are also untenable as a matter of law because there is no genuine dispute that IBM's products do not meet all of the required claim limitations. And all of these issues are on appeal, and so your argument, as I understand it, is that the Court Rule 36, we have no basis for knowing which arguments and issues were necessarily decided. Yes, that's the right ground. So IBM argued in its brief. But doesn't the District Court say that it construed only, quote, only those terms that were strictly necessary to a resolution of the parties' limitations? So we know exactly what claims were construed. That's right. They were strictly necessary for that second ground of no infringement. In the first ground, it doesn't apply to claim construction rulings at all. There's no mention of the claim construction ruling. And that third ruling would be superfluous if they were applying the claims in the first instance. So the argument with respect to the evidentiary failing was that there was insufficient evidence no matter what the claim construction was. That's correct, Your Honor. IBM argued in its brief, you do not need to address claim construction because you can summarily affirm solely on a lack of evidence. And this Court asked clarification during argument at times. Do we need to decide claim construction? IBM's counsel said, no, no, no, you don't. You may summarily affirm solely based on a lack of evidence. And this Court, in other cases like Verizon, Detox, Hibernate, Recited, and Paradox Security, will look at cases like this and say, you don't need to address claim construction. We can decide this based on a lack of evidence and just affirm a judgment of no infringement. Well, assuming that the claim construction is still in play, tell us why you think the District Court misconstrued the multi-level, multimedia security phrase. Yes, Your Honor. So the seven or two family of patents, we're talking about four patents that descend from a common specification. It provides systems and methods for securing data objects using both access control and encryption at the object level. And you can see this as it goes through at column two, lines five through seven. It's discussing the prior article, but it's doing it in the context of what the invention is. The simple encryption of data being communicated between two points only provides one level of security. And then at column two, lines 31 through 34, it says the secure method of labeling files can provide a level of protection in addition to cryptographic protection. But you've got some prosecution history that gets in the way, doesn't it? Your Honor, yes. The defendants have asserted that there's some kind of prosecution disclaimer. But I think if you look at the context of patents in terms of the claims, the specification, and the prosecution history as a whole, it's very clear that what they're claiming here is only one level of encryption is required. Two can be used. Five can be used. Infinite numbers, as long as you have enough source of encryption, can be used. But only one is required. And you can see that in claim one of the 702 patent. So it talks about labeling the object, encrypting the object, reading the object label. It's on the inside cover. It's also at A156. But the specification was amended at appendix page 427. Do you know the language I'm referring to? I do, Your Honor. And that's pretty clear, pretty strong language. And it was in response to an indefiniteness rejection. So it matters, does it not? It matters, but there's actually three things that happen in response to that indefinite rejection. First of all, claims were amended. So the examiner said, you're missing essential steps in claim one. It's indefinite. You're missing the steps of labeling a message, reading a message label, encrypting a message, and decrypting a message. Again, the singular, there's only one thing being encrypted there. So the examiner didn't think a second layer of encryption was an essential step. It's inconceivable that the examiner would be looking at the essential steps of a method claim and ignore the fact that there's no encryption of a second object there. It's not required under claim one. It is required under claim four. So if you look at claim four of the 702 patent, that's the first time that encrypting a second object is discussed. But the preamble of the claim talks about the multilevel multimedia security. Right. It's talking about how you encrypt one level. Well, you have to read in three, four, or five steps into the preamble in order to get a second layer of encryption. Those steps are not required under claim one. The examiner said, here are the essential steps. The essential steps to achieve multilevel multimedia security are reading an object label, encrypting an object, just a singular object. Those are the essential steps. Not encrypting two objects, that's in claim four. That's a dependent claim off of claim one. So when you get to claim four, you're now embedding that object that you encrypted in claim one into a second object and encrypting the second object. Are these the same arguments you've made before that were made before in the original case? These are the arguments that were made in the brief. There was very little oral argument on the claim construction issues. It was primarily focused on evidentiary issues. But, yes, these are the same arguments, the same constructions that we're proposing here. The defendants have adopted the district court's constructions, obviously, and are making similar arguments. So the court has heard arguments twice on this issue, and now you're asking us to hear arguments again on the same claim construction issue? This court has heard argument once, Your Honor. Once. The prior argument was based on these exact same claims. Correct, Your Honor. Under collateral estoppel, to preclude a second appeal, the Supreme Court has said that a summary affirmance can be nothing more than what is necessary and essential to sustain that judgment. What about our mandate rule? The mandate rule applies to what happens to a district court. The Fourth Circuit is pretty clear in Doe v. Child that the mandate rule doesn't have any applicability to what an appeals court can do. The mandate rule would preclude, in theory, something that a district court could do on remand if it was within the scope of the mandate. But, again, for collateral estoppel and the mandate rule we're applying the Fourth Circuit law, these aren't necessary and essential to the Federal Circuit's prior judgment and we can't read that into a summary affirmance. But when we decided the prior case under our Rule 36, weren't we essentially summing all the issues that were brought before us at that time? No, Your Honor. Only the issues that were necessary and essential to sustain that judgment. But you argued these same claim constructions before us and we ruled on the basis of a Rule 36. But those weren't necessary to sustain a judgment of non-infringement. The court asked, do we need to address claim construction? IBM responded, no, and this court's precedent is clear that it doesn't. But you responded, yes. Well, certainly we wanted to have the claims construed for the very reason that we didn't want to have... You got them construed. Where, Your Honor? Well, the district court construed them. Right, we wanted the Federal Circuit to review them. That was the point at the first instance. We did. We reviewed the case and we affirmed the claim construction on the basis of a Rule 36. Well, Your Honor, the Supreme Court said, no, a summary affirmance, you can't read in things to a summary affirmance. Only what's essential to sustain the judgment. And those claim construction rulings weren't essential to sustain that judgment. This court could have affirmed it based on a lack of evidence. That was an alternative ground presented by the district court. But that's straight Fourth Circuit law. If there's alternative ground, neither one is necessary and essential to the judgment. So a Rule 36 summary affirmance does not import those claim constructions into it. I'd like to turn a little bit... But let's say we've heard you now. Let's say we assume that you've made it past collateral estoppel. You've made it past the mandate rule. Now you're before us. You're arguing the same arguments. Why shouldn't we just summarily affirm the district court right now from the bench? I think because the claim constructions are clearly wrong. If you look at Claim 1, you'll see that only one layer of encryption is required by the claims. If you look at the specification, it says specifically that DECOM... The invention is called DECOM. It says... This is at A153, column 5, lines 18 through 28. It says, The present invention, known as the distributed cryptographic object method, can securely manage and track a single encrypted object or encrypted object embedded within other encrypted objects. So again, only one layer of encryption is required. More can be done, but one is required. So Claim 1, only one level. Claim 4, two or more levels. Is this a new argument here? It's the same argument. It's the same argument. I'm having a hard time seeing why you should get too biased at the Apple. Your Honor, because the summary affirmance does not necessarily affirm those claim constructions with rulings, that's what the Fourth Circuit's collateral estoppel rules are for, is to protect the litigants when it's not clear from a judgment whether those were necessary. And it's clear that they weren't necessary and essential to the District Court's judgment. That means they couldn't be necessary and essential to the Federal Circuit's judgment. The District Court said it construed only those terms that were strictly necessary to resolution of a party's motions. It says that, but then if you actually read the opinion, if you look at A24 through A38, which is the first section, the non-infringement based on no evidence, there's no discussion of the claim terms. It says it's under Tex-Ex theory, so that's applying to our claim constructions. There's no evidence of infringement. So that does not incorporate... Can I ask you to move on to indefiniteness? Which one? I'm sorry? Move on to indefiniteness, please, and meanful function. I want you to hit your meanful function button. Okay. Okay. I do want to hit multimedia because it's critical for all the defendants, but... Yeah, but we've already covered that. Okay. Move on. Sure. Your time has expired and you're eating into your bubble time in that. Okay. So, meanful function, there's a number of terms in there for Claim 8. System memory being concerted is not meanful function. It uses means, but the structure within the claim itself overcomes the presumption. Memory is memory. The only function that's described is storing data, so there's nothing special about it. Memory stores data. And even if it is meanful function, the claimant or the specification discloses RAM as memory that can store data. So, it's either not...  or the structure is there for storing data. Memory is memory. RAM is memory. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. So, what's... What's meanful function? What's digital logic? Digital logic... We've asserted it's not meanful function. Digital logic doesn't actually have a function, it's just digital logic means, but it's the claim to use digital logic sort of interchangeably with digital logic means. And then underneath digital logic, there's five sub-elements and those are the structure. They're actually in structural terms, not meanful function terms. So, the structure is actually disclosed within the claim itself. So, those are all structural components. The only one that I think system memory means is in there, but again, that's just memory. The other ones are actually presumed to have the structure. So, there's actually no structure that's lacking there. Is a module containing an algorithm structure? It is, your honor. It's not in meanful function format, though it would be up to the defendants to overcome that presumption. But it is... It's a... The modules are actually disclosed as either a Microsoft embedding package    And then, to defend the algorithms that require their... their structure, it's a known application that performs a known function. And then, to defend the algorithms that require their structure, they're in prose in the three specific examples laid out in the specification. Very lengthy algorithm in prose format. Okay. Why don't we hear from Mr. Cherney, and we'll restore your rebuttal time, Mr. Oakes. May please go around. I'd like to address the substances of the constructions that TechSec has raised, but I would like to point out a little bit about how we got here for one second, because I do think it's relevant to at least the question that Judge Rayna asked about the mandate rule, which is the way we got here was there was a case that TechSec chose to bring against a number of defendants. Judge Branko decided to go forward against one defendant, IBM, first. TechSec and IBM litigated. She construed the claims as she pointed out that were strictly necessary to the terms of the terms she did not construe, and she issued a summary judgment based on IBM's motion. At that point, TechSec had a choice. TechSec, at that point, could have said, okay, let's now go back against the other defendants, but they didn't choose that. What they chose to do was take a Rule 54B appeal to this court. They took that Rule 54B,   once they lost, the mandate issued in this case, Yeah, but you make it sound as though that's not true. It's not true. It's not true. It's not true. That was the only argument that she decided on the basis of IBM. Was claim construction, you lose. No. In fact, that was the last argument that she mentioned. Her opinion begins with, under any construction, there is insubstantial evidence in this case to establish infringement, so I find no non-infringement. Moreover, claim construction. And so that, and that is exactly what was appealed to the federal circuit, and I listened to the oral argument with Judge Lynn and I think Judge Proust, and I listened to it, and it was clear that they were discussing both issues, and either one of which would have been a basis for affirmance, could arguably be a basis for affirmance. Your Honor, I wasn't focusing, I apologize if I was ambiguous, I was focusing on the mandate rule for a second, and unlike final estoppel, which does focus on this question of sensuality, which we disagree with tax icon, the mandate rule does not. So the function of what they did in terms of taking the 54B in this case, and then going up to the Florida appeals and having to go back, at that point, the mandate issue, so the question is what is assumed within the mandate, and the mandate rule, as specified by Engel v. Lockformer, does not have an essentiality question. All the mandate rule does is say, let's take a look at what was the subject of the judgment that was appealed. There is no issue, no dispute, that claim construction and judgment based on that construction was the subject of the decision appealed. Well, that was one subject. It was one subject. But there was an independent subject and an independent basis on which the district court ruled, and that was the failure, the evidentiary failure, regardless of claim construction. Whether we agree or disagree with that, that goes to the question. It does not go to application of the mandate rule, because the mandate rule does not go to whether independent judgments or whether there's an essentiality. It only goes to what went up, what was the subject of the issues that were appealed from the judgment below. So you're saying every time we issue a Rule 36 Affirmance, it's an Affirmance on every single ground asserted? Within that case, because once the mandate issue... That would substantially broaden Rule 36 between... Nobody has ever made this argument before. Only in a limited situation where somebody decides to take a Rule 54b judgment appeal and it goes back to the same case and the mandate issue. Because under the mandate rule, what happens is that whatever is not remanded specifically by the federal circuit but was within the issues that were appealed from judgment below becomes the subject of the mandate. But I'd be happy to go forward... Engel was involving a detailed opinion, correct? It wasn't a Rule 36 Summary Affirmance. Do you have any cases involving the mandate rule which apply to Rule 36? And what was interesting about Engel was that the issue... My question was, do you have any cases that apply to the mandate rule to a Rule 36? No. What was interesting about Engel was that the issue that was subject to the mandate rule was actually not appealed. Well, I said that was the whole issue in Engel. That's not just what's interesting about it. That's why it actually bears no relation to this case. I'm talking, Mr. Chairman. That's why it bears no relation to this case. Because in Engel, the real issue was you had an issue you could have appealed. It was within the scope of the judgment. You chose not to. Therefore, we're not going to let you bring it up later. Here, they chose to and they didn't get an answer from the Federal Circuit on that. They actually appealed it and it became subject to the mandate. In Engel, what happened was that they did appeal and it still was subject to the mandate even though the Federal Circuit had nothing about the issue about the payment of royalty. So, you have the same situation where the Federal Circuit has had nothing about the payment of  In fact, there was quite a bit of discussion in the specification about multi-level. In fact, what happened was there was an in-depth in this rejection and as a result, the patentee amended the specification. What the patentee said was specifically about multi-level security. What he didn't notice from Tex-Ex's evidence where it actually defines multi-level security, totally silent. But what the patentee added was multi-level security is achieved because encrypted objects may be nested with other objects which are also encrypted, possibly within other objects, resulting in multiple layers of encryption. Now, Tex-Ex argues that this maybe is permissive. So there's no other discussion at all about how else it may be achieved. And when you look at the language, it's clear that what's being said there is that maybe we have a system that we disclosed that has the capability of nesting encrypted objects within other objects. And that results in multiple layers of encryption. Well, what about multimedia? He really wanted to get to that and I moved him to the means plus function, but I understand why he wanted to get to it. I mean, it's in every single claim and below they seem to treat it as a noun rather than an adjective as though it imparted a separate and additional limitation as opposed to just describing what was subject to what the lower court seemed to adopt was multimedia, no, is a separate and distinct limitation that imparts something additional. And I agree with the lower court. And if you take a look at the interns again, again, what we have here is a situation where first in the prosecution history, there was this indefinite subjection and it was focused on multilevel, multimedia, security, objects. And in response to that, Texact, the patentee, argued, okay, these terms take their ordinary meaning. These are not special terms. Take a look at Dyson. Now, multilevel is not in Dyson. And so these terms, plural, take their ordinary meaning. The only two terms that are in Dyson are multimedia and objects. So you take a look at multimedia and it's explicitly defined in Dyson. And that's the definition. That definition became part of the intrinsic evidence because that dictionary became part of the intrinsic evidence. Then you take a look at the specification and it is very clear what the multimedia aspect is. It says multilevel multimedia security is defined as the ability to have simultaneous control over the knowledge and information flow of numerous media formats while allowing for clear data separation. What are you reading from? The patent, A-153, column 5, line 8 to 16. And it starts off with multilevel multimedia security. And it defines it as the ability to have simultaneous control over the knowledge and information flow of numerous media formats. Not just one media format, numerous and simultaneous. That's why it's multimedia. While allowing for clear data separation. At some level, the multilevel multimedia security becomes transparent. There's some ambiguity in that sentence about what simultaneous refers to. But then we go on. We're referring to the fact that you have different levels simultaneously. At each level there might be different types of media. It's referring to simultaneous control over the knowledge and information flow of each media format. It has to be multimedia. Well, no. When we go to the next one, which I was about to read, it says examples of multimedia objects would include a file that contains two or more of the following. And then the list of media there is actually very similar to the list in Dyson. There's slight differences, but it's the same type of list of different types of media. There's some differences between the other types of media. So what the patent is conveying there is that in order to have multimedia, what you have to have is security of these multimedia objects and simultaneously controlling two or more, not one of any type. But the claims only cover objects. The claims don't cover other things. No, the claims cover objects, but then the preamble, which limits it by their own emission by the fact that when the patent office push them on indefiniteness, they say this is not a limitation, it requires multimedia. So the answer is... I'm not following you. Numerous media formats could be anything at all, but the claims are limited to objects. But because they're multilevel, we know that one object is encrypted into another object. That's only if we agree with you on the definition. You're assuming the answer that you want. Well, we start off with multilevel, so in some respects, I have to work hand in hand. So the answer is yes. I do believe, and I do believe since the specification, treat them as multiple layers of encryption, and then multimedia, and multimedia objects are things that have two or more media. And so, in that respect, you have the intrinsic evidence entirely consistent, and what was missing from Techdeck's presentation was any resource of the intrinsic evidence, other than to say, well, the claims is one object. But as Judge Lynn pointed out, you have the preamble throughout, which is a limitation, because as we saw from the prosecution history, the patent office pushed back and said, wait a second, what does this mean? There was no fight about whether it was a limitation. They said, here's what it means, okay? And then they amended the preamble and then multimedia says, which entirely consistently is that you have these multimedia objects. What are multimedia objects? Multimedia objects include two or more of the following. So you have an entirely consistent portrayal, which is consistent with what Judge Franklin's view was, that is based on the intrinsic evidence. And so what the Tex-Ex group says is, well, it says object. Throughout the entire Tex-Ex argument, you heard nothing other than it says object. But that doesn't deal with the fact that multilevel multimedia isn't about the word object, it's about the statement and the preamble that we all agree  multimedia is supposed to mean. So at this point, what we have is this entirely consistent view of the invention that Judge Franklin picked up on that's totally consistent with the intrinsic record. So you have multimedia which they explicitly point to a dictionary. I mean, I'm not exactly sure what their view is. At some point, they were allowed to take from it that that's what multimedia meant in the context of that limitation. That's what Judge Brinkman took and that's how she applied it in the IBM case. Multilevel, they were pushing on that as well. And what did they say? They said multilevel encryption. Multilevel security results from the fact that you have encryption within encryption. So the way Judge Brinkman viewed it is entirely consistent with the way the invention works, which is you have multimedia objects that have two or more media from that list of different types of media, not just one type  So there's no claim construction of either multilevel control or multimedia that we don't really need to get to the means-plus function issue. Well, the means-plus function issue is an interesting one. My question is, is that right if we affirm on either one of the claim constructions we don't have to get into the indefiniteness problem? It's a hard question and I'm trying to answer it in the sense of judgment because there's actually no judgment in this case based on the means-plus function. So it's a hard one to answer in the sense that there was a judgment entered in the IBM case. I believe that it is subject to clausology and that the only belief. But in this case there actually is no judgment yet entered on the means-plus function claims. So it becomes a difficult question to answer in the sense that there is no judgment in the IBM case. In this case what happened was they then went back and there was a discussion about the judgment in this case and there was an agreement to take judgment on multimedia, agreement on multilevel, but there was no discussion about the means-plus function. But the interesting thing is that if it's truly an indefinite opinion in validity, there is no alternative grounds on that ground. So in that sense it becomes subject clearly to clausology. So because for example there was no alternative in validity grounds. And so but from our perspective you know this court can for example pick multimedia and we win. I think we win on multilevel as well. I do agree you know despite perhaps some of the disagreement about the mandate rule that the mandate rule controls not because this is a broadening of Rule 36 but because in this situation where the plaintiff has made the choice to take Rule 54B the mandate has issued in this case and it subsumes the claim construction. And that is clearly the ruling of the mandate rule which is anything that is subject of appeal from which it is the judgment from which it is appealed that is not excised out and subject of remand becomes part of the mandate. And it is the subject of the mandate here. I see I'm out of time Your Honor. Thank you very  Thank you Mr. Charney. Mr. Rowe. Mr. Jones where do we stand with respect to this indefinite question? Did we affirm on either one of the claims? No Your Honor. It is set forth in the stipulation and then in the judgment. So multimedia is dispositive for every defendant. So if the court were to affirm on multimedia that's dispositive for everyone. If the court were to reverse on multimedia but affirm on multi-level security we believe there are still some defendants who would do the two layers of encryption. PayPal would be out. PayPal would be out. We said PayPal would be out. It's just an encrypted payment transaction. But there are some database products which have like full file encryption plus column encryption. So we think there are some that would do two levels of encryption. Again we don't think that's required. But multimedia is dispositive for everyone. Multi-level. But what about indefiniteness and the means plus function? It seems like there wasn't any judgment below. There is no judgment below. So again, this is sort of like Sony versus Thorner that we cited. So we're trying not to do a piecemeal appeal. We'd like to have that decided now because if we get these claim constructions reversed and go back down then we don't want to have the court immediately say well all the means plus function claims are indefinite and we'd have to save that for a second appeal. We'd like to get those things resolved now. They are not necessary to the district court's judgment or part of the stipulation. But to avoid piecemeal appeals I think it should be decided now. Both sides have argued them. It's appropriate and the court does have the opportunity to do that to avoid that waste of judicial resources. Could I turn to the multimedia terms? So again the defendant's argument seems to be that multimedia is an adjective to define object. They keep saying well multimedia objects do this but in the preamble it's multimedia security not multimedia objects. The claims themselves only discuss objects not multimedia objects. And multimedia security in response to that 112 rejection in column 4 starting at line 28 says multimedia security is achieved because objects are encrypted. Not multimedia objects, objects. And then it clarifies that even further. Where other encryption systems only encrypt files or other data the system of the present invention encrypts any object encompassing all forms of media. So it's not limited to a certain type of object it's not a multimedia object it's any object. And you can see that because the district court's construction excludes every embodiment disclosed in the patent. All three specific embodiments in the patent talk about encrypting and protecting plain text objects in Microsoft Word and Word Perfect. Those aren't multimedia objects as the district court construed it but plain text objects. And if you look at claim 2 which was added during that same amendment claim 2 talks about protecting an application document. So again the same thing like a Microsoft Word document or a Word Perfect document. The district court's construction reads out claim 2 altogether. They're requiring some kind of file with video and graphics and a high degree of user interaction. But that's not what the claims and specifications talk about there. So you can't read out every embodiment. There are specific embodiments disclosed. And that construction would read out every single one of those. So if you look at the prosecution history as a whole you see an amendment to claim 1 where the examiner says you're missing the essential steps and says the message. Again the examiner thinks this is just a message or an object type and it responds, it clarifies that an object is any distinct separate entity, any user selected group of data. Again, during the same amendment they're saying any selected data, not a multimedia file, not a multimedia object, that doesn't appear anywhere in the preamble and doesn't appear anywhere in the claim. It's multimedia security which can protect any object. And then specifically the claim is intended to encompass a broad application so any type of data. Other things can only be files. We can protect any object, any smaller piece of data, any user selected group of data. Okay, thank you Mr. Oaks. Thank both counsel for their argument. The case is